IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


GARY BANKS,                          :
                                     :
          Plaintiff                  :
                                     :
     v.                              :    CIVIL NO. 3:CV-11-1878
                                     :
SUPERINTENDENT COLLINS, ET AL.,      :    (Judge Conaboy)
                                     :
          Defendants                 :

_____

**MEMORANDUM**
**Background**

     Gary Banks, an inmate presently confined at the State
Correctional Institution, Frackville, Pennsylvania (SCI-Frackville)
initiated this pro se civil rights action pursuant to 42 U.S.C. §
1983.  An Amended Complaint (Doc. 25) was previously filed.

     By Memorandum and Order dated March 26, 2013, Defendant
Ingrid Li, M.D.'s motion to dismiss was granted.  The other named
Defendants are the following SCI-Frackville officials:
Superintendent Collins; Deputy Superintendents Kovalchi, Lorgrady;
Lieutenants Popson, Marichi, R. Manbeck; Sergeants Moss, Bresnick,
Walker; as well as Correctional Officers McCormick and Trotman
(hereinafter Corrections Defendants).

     A March 28, 2013 Memorandum and Order partially granted a
motion to dismiss filed by the Corrections Defendants.  See Doc.
49. Specifically, dismissal was granted in favor of Corrections
Defendants Collins, Kovalchi, Lorgrady, Manbeck, Moss, Bresnick,
Walker, McCormick and Trotmin with respect to the excessive force

1

claim.  Dismissal was also granted with respect to the due process claims regarding Bank's transfers to the Psychiatric Observation Cell (POC) and Restricted Housing Unit (RHU).  The claims against Defendants Popson and Marichi regarding the use of the restraint chair and Plaintiff's contentions that he was subjected to unconstitutional conditions of confinement while housed in the POC were allowed to proceed.

Banks' action provides a prime example of the difficulties faced by prison officials with respect to the supervision of prisoners with mental health issues.  Clearly, the handling of the behavior problems of mentally ill inmates is a significant ongoing challenge facing state and federal correctional officials.  In the present matter, Banks describes himself as having mental health problems which were recognized and identified by SCI-Frackville officials. See Doc.25, ¶ 43.  As a result, while confined at SCI-Frackville Banks was housed at various times in either the Secured Special Needs Unit (SSNU), the RHU, or the POC.

It is alleged that on August 3, 2010 Lieutenant Marichi told Sergeant Bresnick to move Plaintiff from the SSNU to the POC because the inmate had used obscene language to Nurse Karen Haggerty.  See Doc. 25, p. 3.  While housed in the POC, Banks was allegedly deprived of legal and personal property including some basic necessities such as soap, toothpaste, a mattress, and a toothbrush.  In addition, Plaintiff was purportedly only given a single set of clothes and the POC cell had bright 24 hour a day illumination.

Banks next claims that he was deprived of fourteen (14) meals for refusing to uncover an in-cell security camera. Plaintiff asserts that the denial of those meals was improper as food cannot be used by correctional staff as a reward or for punishment.  It is also asserted that Plaintiff's subsequent placement on modified meals consisting of bag meals by Defendant Kovalchi was unlawful because he had not committed one of the enumerated acts of misconduct for which such action (food bag restriction) can be imposed.

Plaintiff next states that he was transferred from the POC to the RHU on September 10, 2010, by Lieutenant Popson based on the inmate's continued refusal to uncover the security camera.  See id. at ¶ 18.  A report issued on September 20, 2010 described Banks as having "had suicidal tendency."  Id. at ¶ 22.  In light of that evaluation, Banks was apparently transferred back to a POC.  While in the POC, Plaintiff continued to receive bag meals from Trotman, Walker, and Bresnock.  See id. at ¶ 23.

On September 22, 2010, Banks was purportedly discharged from the POC and illegally placed in the RHU instead of being returned to the SSNU for treatment of his mental health problems.  Due to his continued covering up of the security camera, Plaintiff was placed on nutri-loaf meals.  After a week without food, Plaintiff was allegedly told by Lieutenant Popson that if he didn't uncover the camera he would be placed in a restraint chair.

When Banks continued to refuse to uncover the security camera on the grounds that he needed medical treatment, an extraction team took the Plaintiff to the infirmary where he was

3

placed in a restraint chair.  After being put in the chair, Banks
was moved to a strip cell which was covered in plexiglass which
allegedly made it hard to breathe.  Later that same day, Plaintiff
was temporarily taken from the strip cell so that his vitals could
be taken and he could be given water.  Nine (9) hours later,
Plaintiff was released from both the strip cell and the restraint
chair.  See id. at ¶ 31.  On October 26, 2011, Plaintiff was again
improperly placed in a POC cell by Defendant Lorgrady.  Banks
remained in the POC for approximately two and a half days where he
was again allegedly subjected to unconstitutional conditions of
confinement.  The Amended Complaint seeks punitive, compensatory,
and nominal damages as well as injunctive relief.

Presently pending is Corrections Defendants' motion for
summary judgment.  See Doc. 53.  The opposed motion is ripe for
consideration.

### Discussion

Corrections Defendants argue that they are entitled to entry
of summary judgment with respect to Plaintiff's surviving claims on
the grounds that: (1) a viable claim of unconstitutional conditions
of confinement with respect to Banks' POC placement has not been
set forth; (2) a reasonable trier of fact could not conclude that
excessive force was exercised in regards to the use of a restraint
chair; and (3) Banks failed to administratively exhaust his claims.
See Doc. 54.

### Standard of Review

Summary judgment is proper if "the pleadings, the discovery
and disclosure materials on file, and any affidavits show that

4

there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at

trial." <u>Celotex</u>, 477 U.S. at 322-23.  "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" <u>Saldana</u>, 260 F.3d at 232 (quoting <u>Williams v. Borough of West Chester</u>, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## **Administrative Exhaustion**

Corrections Defendants contend that although Banks filed Grievance # 341705 with respect to his POC confinement and restraint chair placement, said grievance and all subsequent administrative appeals were rejected as being untimely.  <u>See</u> Doc. 54, p. 15.  Accordingly, they conclude that since Banks failed to properly seek administrative review of his surviving claims in accordance with DOC policy, entry of summary judgment on the basis of non-exhaustion is appropriate.

In support of their argument, Corrections Defendants have submitted a copy of Grievance # 341705 which was filed by Banks and is dated October 25, 2010.  <u>See</u>  Doc. 56-11, Exhibit K, p. 8.  The grievance clearly addresses Plaintiff's pending claims pertaining his September 2010 POC placement after refusing to uncover a security camera, denial of meals, his RHU confinement during that same period, as well as his allegations pertaining to his being placed in a restraint chair on September 29, 2014.

Also submitted for consideration by the Court, is a copy of a December 14, 2010 decision by Chief Grievance Officer Varner which dismissed Plaintiff's final administrative appeal of Grievance 341705.  <u>See id</u>. at p. 1.  It is noted that contrary to

the Corrections Defendants supporting brief, Varner's decision dismissed Plaintiff's final administrative appeal not as being untimely, but rather, as being too lengthy. See Doc. 56-11, Exhibit K.  Also submitted is a copy of a November 17, 2010, rejection of an earlier appeal of Grievance # 341705 by Superintendent Collins on the basis that it was untimely.  See id. at p. 6.  Corrections defendants have additionally provided a copy of SCI-Frackville Grievance Coordinator Damiter's November 5, 2010 rejection of Grievance # 341705 as being untimely.  See id. at p. 7.

The Corrections Defendants have also filed a declaration under penalty of perjury by DOC Administrative Officer Keri Moore, who states that the only grievance filed by Plaintiff which is "relative to this lawsuit" was Grievance # 341705 which was properly denied as being untimely.  Doc. 56-12, Exhibit L, ¶ 9.

Banks' opposing brief indicates that he filed grievances and resubmitted grievances which were not processed as a means of retaliation.  Plaintiff also contends that he was denied access to institutional grievance forms in order to prevent him from exhausting administrative remedies.

Section 1997e(a) of title 42 U.S.C. provides:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered through

7

administrative avenues." <u>Porter v. Nussle</u>, 122 S.Ct. 983, 992
(2002); <u>Booth v. Churner</u>, 532 U.S. 731, 741 n. 6 (2001).  Claims
for monetary relief are not excused from the exhaustion
requirement.  <u>Nyhuis v. Reno</u>, 204 F.3d 65, 74 (3d Cir. 2000).
Dismissal of an inmate's claim is appropriate when a prisoner has
failed to exhaust his available administrative remedies before
bringing a civil rights action.  <u>Ahmed v. Sromovski</u>, 103 F. Supp.
2d 838, 843 (E.D. Pa. 2000).  "[E]xhaustion must occur prior to
filing suit, not while the suit is pending."  <u>Tribe v. Harvey</u>, 248
F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing <u>Freeman v.
Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999)); <u>Oriakhi v. United
States</u>, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

An inmate is not required to specifically plead or
demonstrate exhaustion in his or her complaint.  <u>See</u> <u>Jones v. Bock</u>,
549 U.S. 199, 216 (2007);  <u>see</u> <u>also Ray v. Kertes</u>, 285 F.3d 287 (3d
Cir. 2002)(a prisoner does not have to allege in his complaint that
he has exhausted administrative remedies).  Rather, pursuant to the
standards announced in <u>Williams v. Runyon</u>, 130 F.3d 568, 573 (3d
Cir. 1997), it is the burden of a defendant asserting the defense
of non-exhaustion to plead and prove it.[1]  The United States
Supreme Court in <u>Jones</u> noted that the primary purpose of the
exhaustion requirement is to allow prison officials to address
complaints before being subjected to suit, reducing litigation to

_____

1.   In <u>Mitchell v. Horn</u>, 318 F.3d 523, 529 (3d Cir. 2003), the
United States Court of Appeals for the Third Circuit similarly
stated that "[f]ailure to exhaust administrative remedies is an
affirmative defense for the defendant to plead."

8

the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record.

The administrative exhaustion mandate also implies a procedural default component. <u>Spruill v. Gillis</u> 372 F.3d 218, 222 (3d Cir. 2004). As explained by the Third Circuit Court of Appeals, a procedural default rule "prevents an end-run around the exhaustion requirement." <u>Id</u>. at 230. It also ensures "prisoner compliance with the specific requirements of the grievance system" and encourages inmates to pursue their administrative grievances "to the fullest." <u>Id</u>. Similarly, the Supreme Court has observed that proper exhaustion of available administrative remedies is mandatory, meaning that prisoners must comply with the grievance system's procedural rules, including time limitations. <u>Woodford v. Ngo</u>, 548 U.S. 81 (2006).

The Court of Appeals for the Third Circuit has recognized that "[t]here is no futility exception" to the exhaustion requirement. <u>Brown v. Croak</u>, 312 F.3d 109, 112 (3d Cir. 2002) (citing <u>Nyhuis</u>, 204 F.3d at 75. A subsequent decision by the Third Circuit Court of Appeals reiterated its no futility exception by rejecting an inmate's argument that exhaustion should be excused because prisoner grievances were regularly rejected. <u>Hill v. Smith</u>, 186 Fed. Appx. 271, 274 (3d Cir. 2006). The Court of Appeals has also rejected "sensitive' subject matter or 'fear of retaliation' as a basis for excusing a prisoner's failure to exhaust." <u>Pena-Ruiz v. Solorzano</u>, 281 Fed. Appx. 110, 113 (3d Cir. 2008).

A Consolidated Inmate Grievance Review System has been established by the Pennsylvania Department of Corrections ("DOC").[2] Section V of DC-ADM 804 (effective December 8, 2010) states that "every individual committed to its custody shall have access to a formal procedure through which to seek the resolution of problems or other issues of concern arising during the course of confinement." <u>See</u> Doc. 29, p. 8.  It adds that the formal procedure shall be known as the Inmate Grievance System and provides a forum of review and two (2) avenues of appeal.  Section VI ("Procedures") of DC-ADM 804 provides that, after attempted informal resolution of the problem, a written grievance may be submitted to the Facility Grievance Coordinator within fifteen (15) working days after the events upon which the claims are based, but allowances of extensions of time will be granted under certain circumstances.

An appeal from the Grievance Coordinator's Initial Review decision may be made in writing within ten (10) working days to the Facility Manager or Superintendent.  A final written appeal may be presented within fifteen (15) working days to the Secretary's Office of Inmate Grievances and Appeals (SOIGA).  A prisoner, in seeking review through the DOC grievance system, may include reasonable requests for compensation or other legal relief normally available from a court.  However, an improperly submitted grievance will not be reviewed.

---

2.  The DOC's grievance system has been periodically amended.

Plaintiff's opposing brief acknowledges that Grievance Coordinator Damiter refused to process Grievance # 341705 because it was untimely.  <u>See</u> Doc. 78, p. 20.  Banks also agrees that Grievance Coordinator Dorina Varner rejected his administrative appeal of Grievance # 341705 as being too lengthy.  <u>See</u> <u>id</u>. at p. 21.

With respect to Plaintiff's contention that his attempts to file grievances and appeals were impeded by correctional staff, his own filings undermine said argument.  Specifically, Plaintiff has submitted documents indicating that he filed multiple grievances between July 23, 2010 and January 12, 2011.  <u>See</u> Doc. 80, p. 15. He has also provided the Court with a copy of a January 24, 2011 response by Chief Grievance Officer Varner to Grievance # 347051 which concerned actions taken by prison officials on or about November 25, 2010.  <u>See</u> <u>id</u>. at p. 73.  Plaintiff has also provided this Court with copies of other grievances and responses he filed and received during 2010-11.  <u>See</u> Doc. 80.

It does appear that Plaintiff exhausted Grievance # 347051 regarding events that happened after November 25, 2010.  <u>See</u> Doc. 80, p. 73.  However, the allegations set forth in that grievance do not include the conduct being challenged in this matter.  As noted above, Banks has also submitted copies of other grievances which he filed while at SCI-Frackville.  While those grievances do not establish that Plaintiff complied with the exhaustion requirement with respect to his pending allegations, they do contradict his argument of not being provided with access to grievance forms.

11

Based upon an application of the well settled administrative exhaustion standards and the undisputed supporting evidence presented by the Corrections Defendants, they have satisfied their burden of demonstrating that the substance of the Plaintiff's surviving claims was not encompassed within any grievance filed to final administrative review by banks.  Moreover, the Plaintiff has not provided the Court with any sufficient basis upon which it could be concluded that he is entitled to be excused from the exhaustion requirement.  Accordingly, Corrections Defendants are entitled to entry of summary judgment on the basis of non-exhaustion of administrative remedies.[3]  An appropriate Order will enter.[4]

S/Richard P. Conaboy
 Richard P. Conaboy
 United States District Judge

DATED: SEPTEMBER 26, 2014

---

3.  In light of this determination, discussion of the remaining summary judgment arguments is not warranted.

4.  If Plaintiff can provide proof that any of remaining claims raised in this action have been exhausted or if he can present specific facts showing that he was prevented from compiling with the exhaustion requirement with respect to those claims, he may file a reconsideration motion within fourteen (14) days of the date of this memorandum.